UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

AARON NICHOLSON,

    Petitioner,

vs.

A.P. KANE, Warden,

    Respondent.
_____/

No. C 06-0273 PJH (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

    This is a habeas corpus case filed pro se by a state prisoner pursuant to 28 U.S.C. § 2254.  The court ordered respondent to show cause why the writ should not be granted based on petitioner's four cognizable claims for relief.  Respondent filed a motion to dismiss the petition as untimely, which was denied.  Thereafter, respondent filed an answer and a memorandum of points and authorities in support of it, and has lodged exhibits with the court.  Although given an opportunity to do so, petitioner did not file a traverse.  For the reasons set out below, the petition is denied.

## BACKGROUND

    On November 19, 2002, a jury in San Mateo County Superior Court convicted petitioner of two counts of resisting or obstructing an officer, one count of making a criminal threat, and escape without force or violence.  The jury also acquitted petitioner of a second count of making a criminal threat.  The jury found true allegations that petitioner had eleven prior felony convictions, seven of which were qualified as "strikes" under California's "Three Strikes" law, and that he had served three prior prison terms.  The trial court thereafter sentenced petitioner to a term of 28 years to life in state prison.  The California Court of

Appeal affirmed, and the California Supreme Court denied the petition for review.

Petitioner does not dispute the following factual background, which was set forth in the California Court of Appeal opinion:

> In July 1997, appellant was released from prison on parole following his conviction for attempted murder. On July 21, 1998, parole agent Stephen Armstrong was the officer of the day in the Redwood City Parole Office. Based on a telephone call he received that day, Armstrong determined that appellant had violated his parole and recommended to the supervising agent Dennis Tozier that a warrant for appellant's arrest be requested from the Board of Prison Terms. The warrant for appellant's arrest issued that day. According to Tozier, once a warrant issues for a parolee, his parole status is suspended and, while he is at large, he is considered a "fugitive wanted."
>
> On July 30, 1998, appellant arrived at the parole office for his regularly scheduled appointment.  Armstrong intended to arrest him and had enlisted the assistance of four other parole agents. Armstrong met appellant in the waiting room, told appellant he had to test him for narcotics, and escorted him down a hallway to the location where the agents planned to effect the arrest. Once at the designated location, Armstrong told appellant that he was under arrest and directed him to put his hands against the wall. Appellant was verbally abusive and asked why he was being arrested. The agents then put appellant up against the wall and Armstrong and Tozier tried to grab his wrist and handcuff him. Armstrong noticed that appellant' arms were covered with a Vaseline-like substance so Armstrong and Tozier could not grab him. Armstrong then requested help from the other agents. While Armstrong held appellant's arm, parole agent Jeffrey Gates attempted to handcuff him. Appellant flailed his arms to avoid being handcuffed, causing Armstrong and Gates to fall. Appellant then bolted out the back door, with Gates and Armstrong in pursuit.
>
> Less than half an hour later, appellant called the parole office and spoke to parole agent Irma Vargas.  When appellant asked why he was being arrested Vargas told him he was under investigation and needed to turn himself in. Appellant became really upset and said loudly, "Listen carefully because I'm only going to say this once . . . . My name is Aaron Nicholson." "Watch your back. I'm gonna shoot up the agents. I'm gonna blow up the parole office. I'm going to shoot up the office. Watch your back. It's on. . . . Don't fuck with me you mother fuckers." Appellant's threats caused Vargas to feel "uncomfortable" because she believed he could "do something" since he had escaped. Vargas told Jennifer Ashik, the parole office's office assistant, about appellant's threats and said she felt that he was threatening the lives of her family as well as the parole agents. Vargas felt cautious when she left the parole office and was more aware of her surroundings because of appellant's threats. After hearing appellant's threats on the speaker phone, parole agent Veronica Sepulveda felt frightened and left for the day. Vargas told Tozier that appellant had made generalized threats against the parole agents and nothing specific about any agent.
>
> Armstrong testified that Vargas told him of appellant's threats against the parole office. Armstrong said he "thought she told [him] that [he[ was specifically named in those threats," but had "no independent recollection of that" at the time of trial. On cross-examination, Armstrong said he believed he was s subject of appellant's threats because he was the agent who obtained the warrant for appellant's arrest, brought appellant from the parole

United States District Court
For the Northern District of California

office reception area to the arrest site, and , with others, attempted to arrest appellant. Due to appellant's criminal history, Armstrong believed appellant's threats, was concerned for himself and his family, and contacted his local police department for protection. The California Highway Patrol (CHP) and Redwood City Police Department were also notified of appellant's threats.

The next evening, the police went to a Palo Alto shopping center to arrest appellant, based on information that he would be there. Police Officer Bertrand Millikin observed appellant's car and followed it onto the freeway. After appellant swerved and accelerated to a high speed to evade him, Millikin activated his lights and siren, and he and other officers gave chase. Eventually, appellant stopped his car on the shoulder, scaled a fence and fled on foot. A search of appellant's car turned up a loaded .32-caliber handgun and 43 extra handgun cartridges.

Appellant was arrested on October 28, 1998. The following day he was interviewed by CHP Officer Lorraine Kempf after being advised of and waiving his *Miranda* rights []. Appellant told Kempf that on July 30 he appeared for an appointment at the parole office. While he was being escorted down the hallway for what he believed was a urine test, numerous officers approached him and his arm was painfully bent back in an attempt to handcuff him. Appellant said he broke free and fled. He then called the parole office to find out why they had attempted to arrest him and said, "Give me the officer of the day, or I'll come down there and beat your ass. " He also said he had been shot during the pursuit. Kempf said that appellant expressly referred to Armstrong when he said, "He better watch his back. I'll beat his ass."

Resp. Ex. 3 at 2-4.

## STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that

3

reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13.  A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.  The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, the application must be "objectively unreasonable" to support granting the writ.  *Id.* at 409.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. 322 at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000).

## DISCUSSION

As grounds for federal habeas relief, petitioner asserts that: (1) there was insufficient evidence of escape; (2) his due process rights were violated by the trial court's instruction defining "lawful custody;" (3) there was insufficient evidence to support his conviction of making criminal threats; and (4) his due process and Sixth Amendment rights were violated by the court's failure to instruct on a lesser included offense.

### I.    Sufficiency of Evidence of Escape

Petitioner claims that his right to due process was violated because there was insufficient evidence to support his conviction for escape.  Specifically, he argues that there

4

was insufficient evidence that he was in custody at the parole office when he ran away.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). A state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt therefore states a constitutional claim, *Jackson v. Virginia*, 443 U.S. 307, 321 (1979), which, if proven, entitles him to federal habeas relief, *id.* at 324. The federal court determines only whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt, may the writ be granted. *Id* at 324

California's escape statute, Cal. Pen Code § 4532(b)(1), provides as follows:

> Every prisoner arrested and booked for, charged with, or convicted of a felony, . . . who is confined in any county or city jail [or] prison . . . or . . . is in the lawful custody of any officer or person, . . . . who escapes or attempts to escape from custody he or she is, . . . guilty of a felony.

Petitioner does not dispute the evidence of what happened at the parole office before he ran away from the parole agents. A warrant had issued for his arrest, parole agent Armstrong escorted him down a hall and told him he was under arrest and to put his hands against the wall, Armstrong and four other agents surrounded petitioner and put petitioner against a wall, Armstrong and another agent tried to grab petitioner's wrist, and one agent then held petitioner's arm while another tried to handcuff him. What petitioner disputes is whether these circumstances amount to his being a "prisoner" in "lawful custody" within the meaning of Cal. Penal Code § 4532(b)(1) at the time he ran away. Thus, as the California Court of Appeal correctly stated in denying petitioner's claim, although petitioner "frames his argument as a challenge to the sufficiency of the evidence, its resolution depends primarily on our interpretation of the escape statute [ § 4532(b)(1)]." Resp. Ex. 3 at 4. The state appellate court, citing state law, found that as a parolee,

5

petitioner was a "prisoner" within the meaning of § 4532(b)(1). *Id.* at 5-8. The court further explained that under California law, "in lawful custody" under § 4532(b)(1) means that he was "physically deprived of his freedom of action in any significant way or [was] led to believe, as a reasonable person, that he [was] so deprived." *Id.* at 8-9 (internal citations and quotations omitted). Such a restraint was sufficiently demonstrated by the evidence of an arrest warrant and that the parole agents had told him he was under arrest, put his hands up against the wall, held him against the wall, and grabbed his arm. *Id.* at 9.

This court is bound by the California Court of Appeal's interpretation of § 4532(b)(1). *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (state court's interpretation of state law, including one announced on direct appeal of challenged conviction, binds federal court sitting in habeas corpus); *see also Hicks v. Feiock*, 485 U.S. 624, 629 (1988) (even a determination of state law made by an intermediate appellate court must be followed by federal habeas court). The state appellate court's interpretation of the "prisoner" and "lawful custody" elements of § 4532(b)(1) are a matter of state law binding on this court. Under such interpretation of the law, there was plainly sufficient evidence for a rational jury to find beyond a reasonable doubt that petitioner was a prisoner in lawful custody under § 4532(b)(1) when he ran away from the parole office. Consequently, petitioner is not entitled to habeas relief on this claim.

**II.    Jury Instruction on "Lawful Custody"**

Petitioner claims that a special jury instruction defining "lawful custody" under the escape statute, Cal. Pen. Code § 4532(b)(1), violated his right to due process. The instruction, given at the prosecutor's request, read as follows:

> A person is "lawfully arrested" or in the lawful custody" of a peace officer when that peace officer attempts to arrest the person based upon an outstanding warrant for that person's arrest.

Resp. Ex. 1, Clerk's Transcript ("CT"), at 712, 733.

An erroneous instruction violates a petitioner's right to due process if it so infected the entire trial that the resulting conviction violates due process, *see Estelle v. McGuire*,

6

502 U.S. 62, 71-72 (1991), or if it relieved the state of its burden of persuasion beyond a reasonable doubt of every essential element of a crime, *see Yates v. Evatt*, 500 U.S. 391, 400-03 (1991).

The California Court of Appeal found the instruction erroneous because it "states expressly that a lawful arrest is the equivalent of an attempt to arrest." Resp. Ex. 3 at 10. The court found this to be "confusing" and "too broad" because, for example, "*pursuit* does not constitute a *restraint* sufficient to be labeled 'lawful custody'." *Id.* at 11 (emphasis in original). The Court of Appeal found the error to be harmless, however, and denied the claim. *Id.*

Petitioner concedes that the state court was correct that the error in the instruction is subject to the harmless error test. Writ of Habeas Corpus Mem. P. & A. at 13. The court notes, however, that petitioner's contention that the special instruction "essentially" created a "directed verdict", Pet. at 8; Writ of Habeas Corpus Mem. P. & A. at 12, is incorrect. The instruction did not direct a verdict because it did not instruct the jury on what predicate facts to find. *See Carella v. California*, 491 U.S. 263, 266 (1989) (mandatory presumption is not equivalent to a directed verdict for the state because the jury is still required to find the predicate facts underlying each element beyond a reasonable doubt); *cf., e.g., Powell v .Galaza*, 328 F.3d 558, 563-64 (9th Cir. 2003) (finding that court's midtrial instruction to jury that defendant's testimony was admission that specific intent element had been satisfied essentially directed jury's verdict).

At most, the error in the instruction was that it created an impermissible "mandatory presumption" insofar as it instructed the jury to find the custody element if it found an attempted arrest pursuant to an arrest warrant. *See United States v. Warren*, 25 F.3d 890, 897 (9th Cir. 1994) ("A mandatory presumption tells the jury that it must presume that an element of a crime has been proven if the government proves certain predicate facts."). Alternatively, the error could simply be characterized as a "misdescription" of the custody element of the escape charge, insofar as it described the element too broadly as including

all attempts to arrest, including when the attempt involves only pursuit but no restraint. *See, e.g. Ho v. Carey*, 332 F.3d 587, 595 (9th Cir. 2003) (murder instruction's misdescription of intent element violated right to due process). In either case, whether the instructional error is characterized as creating a mandatory presumption or misdescribing an element of the offense, the error is subject to a harmless error analysis. *See Carella*, 491 U.S. at 266 (instruction that creates mandatory presumption subject to harmless error analysis); *Ho*, 332 F.3d at 595 (instruction's misdescription of intent element subject to harmless error analysis). Accordingly, the California Court of Appeal was correct that the instructional error was subject to a harmless error analysis.

Where, as here, the state court disposed of a constitutional error as harmless, federal courts must, for purposes of application of the "unreasonable application" clause of 28 U.S.C. § 2254(d)(1), first determine whether the state court's harmless error analysis was objectively unreasonable. *Medina v. Hornung*, 386 F.3d 872, 878 (9th Cir. 2004). Only if the federal court determines that the state court's harmless error analysis was objectively unreasonable, and thus an unreasonable application of clearly established federal law, the federal court then proceeds to the *Brecht* analysis. *Id.* at 877.

The California Court of Appeal found the erroneous instruction on the "lawful custody" element to be harmless as follows:

> The undisputed evidence, including appellant's post-*Miranda* statement, establishes that appellant was informed he was under arrest, ordered to put his hands against the wall, and physically restrained by parole agents who attempted to handcuff him before he broke free and fled. Based on this undisputed evidence, no rational jury could have found that appellant was not in the lawful custody of the parole officers at the time of his escape.

Resp. Ex. 3 at 11. The state court's harmlessness analysis was reasonable. In light of the undisputed evidence that the agents told petitioner that he was under arrest, ordered him to put his hands against the wall, pushed him against the wall, and attempted to secure his wrists for handcuffing, petitioner could not have reasonably believed that he was free to leave the scene. Based on this evidence, the "lawful custody" element would have been found even if the erroneous instruction had not been given because, as described above,

8

such California law provides that the "lawful custody" element is satisfied if a reasonable person would believe under the circumstances that he or she is not free to act. Accordingly, the state court's harmless error analysis was neither contrary to nor an unreasonable application of federal law, and petitioner is not entitled to habeas relief on his claim.

### III.     Sufficiency of Evidence of Criminal Threats

Petitioner claims that there was insufficient evidence to support his conviction for making criminal threats against parole agent Armstrong.  As discussed above, a defendant's right to due process is violated if no rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the evidence presented at trial. *Jackson*, 443 U.S. at 324.

California Penal Code § 422, imposes liability for making criminal threats on :

> [a]ny person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety.

Further, as explained by the California Court of Appeal, under California law, if the defendant does not communicate the threat directly to the victim, the defendant must have specifically intended that it be conveyed to the victim.  Resp. Ex. 3 at 12 (citations omitted). The circumstances surrounding the communication are considered, including the prior relationship of the parties and the manner in which the communication was made. *Id.*

Petitioner argues that there was insufficient evidence because he did not name Armstrong when he spoke to Vargas, he did not tell Vargas to relay his message to Armstrong, and Armstrong did not have any independent recollection that Vargas had told him that petitioner had mentioned Armstrong.  However, there was also other evidence that petitioner intended to direct his threats to Armstrong.  First, it was Armstrong to whom

9

petitioner was verbally abusive when Armstrong told petitioner that he was under arrest, would be tested for drugs, and needed to put his hands against the wall. *Id.* at 2, 12-13. In addition, while fleeing, petitioner had knocked Armstrong down when Armstrong tried to grab his wrists. *Id.* at 2,12-13  It was shortly after this that petitioner called Vargas and told her that he would "shoot up the agents," blow up and shoot up the office, and to "watch your backs." *Id.* at 3, 13.  Based on the fact that petitioner had just had an altercation that principally involved Armstrong, the jury could rationally find that the threats petitioner made over the phone were intended for Armstrong, even if they were also directed at others. Secondly, when petitioner spoke to the police shortly after the incident, he told an officer that in the phone call to Vargas he had asked for the "officer of the day," which was Armstrong, and then specifically referred to Armstrong when he said: "He better watch his back. I'll beat his ass." *Id.* at 4, 13.  A rational jury could have found beyond a reasonable doubt that petitioner was threatening Armstrong with great bodily injury by telling the police officer that he wanted to "beat" Armstrong's "ass," and that petitioner wanted this threat conveyed to Armstrong.

Under these circumstances, the California Court of Appeal's conclusion that sufficient evidence supported the conviction for making criminal threats was neither contrary to nor an unreasonable application of federal law.  Accordingly, petitioner is not entitled to habeas relief on this claim.

**IV.    Jury Instruction on Making Annoying Phone Calls**

Petitioner claims that the trial court's failure to *sua sponte* instruct the jury on the misdemeanor offense of making annoying phone calls (Cal. Pen. Code § 653m) violated his Sixth Amendment rights and his right to due process.  Petitioner claims that he was entitled to this instruction on the grounds that it is a "lesser-included offense" of making criminal threats.

The failure of a state trial court to instruct on lesser-included offenses in a non-capital case does not present a federal constitutional claim, however. *Solis v. Garcia*, 219

F.3d 922, 929 (9th Cir. 2000). To be sure, "the defendant's right to adequate jury instructions on his or her theory of the case might, in some cases, constitute an exception to the general rule." Id. Here, however, petitioner did not present a defense theory that he was guilty of simply making annoying phone calls, as defined by California Penal Code § 653m. Accordingly, the state court's rejection of this claim was neither contrary to nor an unreasonable application of clearly established federal law, and petitioner is not entitled to habeas relief on this claim.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: March 6, 2009.

PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\HC.06\NICHOLSON273.RUL.wpd